CITY OF LAMESA, Appellant,

v.

Myrtle HUTCHINSON, Appellee.

No. 3551.

Court of Civil Appeals of Texas.

Eastland.

June 17, 1960.

Rehearing Denied July 8, 1960.

R. Stansell Clement, Lamesa, Vaughn Wilson, Lubbock, for appellant.

Huff, Splawn & Bowers, Lubbock, for appellee.

WALTER, Justice.

Myrtle Hutchinson, a widow, filed suit against the City of Lamesa for damages for the wrongful death of her husband, H. B. Hutchinson. The city pleaded contributory negligence, assumed risk, unavoidable accident and also pleaded it was engaged in the performance of a governmental function at the time of Hutchinson's death and was, therefore, not responsible for the negligent acts of its agents and employees in the performance of said govermental functions. Based on the verdict and a stipulation of the parties, judgment was entered for the plaintiff for $29,400. The city has appealed from such judgment, contending the court erred (1) in overruling its special exceptions (2) in overruling its motion for an instructed verdict, and its motion for judgment non obstante veredicto, and (3) in rendering judgment based on the jury's answers to the lookout and failure to warn issues because there was no evidence to support them and that said answers are against the great weight and preponderance of the evidence. The city also contends the court committed fundamental error in rendering judgment against it because the jury found the deceased's death was caused by the negligence of a fellow servant. It also contends the judgment is excessive.

The appellee has a point that the court erred in failing to give her $1,000 as found by the jury for conscious pain and suffering of the deceased prior to his death.

The record discloses that H. B. Hutchinson, the deceased, was employed in the street department of the City of Lamesa and drew his salary from the street department; that on the day of his death Hutchinson had been working on a truck that belonged to the street department, and after one of the city's pickup trucks had failed to pull it out, a dozer owned and operated by the city was chained onto said truck and pulled it out of the mud; that Hutchinson was the person who did all the hitching and unhitching with the chain; that after Hutchinson unhitched the chain from the dozer and while in the act of unhooking the chain from the truck, the truck driver started forward and ran over Hutchinson, inflicting injuries which caused his death. It was stipulated that the city paid Hutchinson's doctor, hospital and funeral expenses. The record shows that before these bills were paid, the city manager made a complete investigation of the accident. The city manager testified that the work Hutchinson was doing on the day of his accident was 100% for the benefit of the people of Lamesa. The truck driver testified as follows:

"Q. When the dozer came over, did it back up to the truck? A. Well, he drove south and then backed up.

"Q. And, of course, Shorty hooked the chain, is that right, is correct, to the dozer? A. Yes.

"Q. And then what happened, if anything? A. He pulled it out on level ground and stopped.

"Q. And then what happened? A. He taken the chain off the bulldozer, the drawbar.

"Q. All right. Then what happened, if anything? A. Well, Bill waved for me to pull the truck up to where we could get the chain off the truck.

"Q. Where was Shorty? A. When I seen him unhook the chain off the bulldozer he stepped back out of the way, and I got down off the fender and walked to the front bumper and looked to see if he was under the truck, and he wasn't.

"Q. And you got back in the truck? A. Yes.

"Q. Did you drive it up? A. Yes.

"Q. Then what happened, if anything? A. Well, when I drove up I cut the motor off and walked behind the truck and I seen him laying over there in some mud and water.

"Q. Which way did you drive the truck? A. I drove a northeast course.

"Q. Did you drive it straight or cut the wheels? A. Cut the wheels to the northeast.

"Q. Then you got out and found him? A. Yes."

■ Our Supreme Court in the case of the City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 1011, 26 A.L.R.2d 935, has stated the rule to be followed by us in deciding this case, as follows: "As stated in City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57, 60, 'the rule is recognized that a municipality is exempt from liability when it performs a duty imposed upon it as the arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit. That the exemption of a governmental agency from liability pertains only to those acts or functions which are performed as the agent of the state in furtherance of general law for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of a municipality." This rule is well settled. It is in the application of this rule to a particular fact situation that the difficulty arises.

■ We have concluded that the work which Hutchinson was performing on the date and at the time of his fatal accident was not a duty imposed upon the city as an arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit. City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935; City of Wichita Falls v. Phillips, Tex.Civ.App., 87 S.W.2d 544. We hold the evidence failed to establish the hauling of brush and tree limbs and grass from the streets and alleys of the city was solely for the public health. It is likewise apparent that the work being performed by Hutchinson for ten or fifteen minutes prior to and at the time of his fatal accident, namely, that of hitching and unhitching the tow chain to and from the truck and the dozer had nothing to do with public health and could not be classified as a duty imposed upon the city as an arm or agent of the state in the exercise of a governmental function. The work which Hutchinson was performing on that day and at the time of his fatal accident was primarily for the benefit of those within the corporate limits of the city and was, therefore, proprietory and not a governmental function. In City of Fort Worth v. Wiggins, Tex.Com.App., 5 S.W.2d 761, 764, the court said: "Of course, in a general sense every function of a municipal corporation is in the interest of, and as an agent for, the public, and therefore governmental in its nature. But it is not in this broad sense that the classification exists * * *. We take it to be the true rule, if the act or function involves, in any substantial degree or to any material extent, the serving of its own inhabitants, and therefore private purposes, in respect not undertaken by general law, that liability for negligence exists." In other words, if it can be said that the cutting of the weeds served both the public health and the maintenance of the streets, then the city will be liable for the negligence of its employee engaged in such cutting. See City of Wichita Falls v. Mauldin, Tex.Com.App., 39 S.W.2d 859; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57.

■ We will not burden this opinion with a detailed account of the evidence on the issues of failure to warn and failure to keep a proper lookout. We are of the opinion that the record contains some evidence of probative value which supports the jury's findings on these issues.

We have considered all the evidence and are of the opinion the jury's answers to the failure to warn and failure to keep a proper lookout issues are not against the great weight and preponderance of the evidence.

■ The appellant's point that the court committed fundamental error in rendering judgment against it because the jury found that Hutchinson's death was due to the

negligence of a fellow servant cannot be sustained. Our Supreme Court in a Per Curiam opinion in the case of McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265, 266, had the following to say with reference to fundamental error. "Since the Rules make no provision for consideration of errors apparent on the face of the record, the concept of fundamental error is much narrower than it was under Article 1837, and many errors formerly treated as fundamental may not be so regarded now. The majority opinion in the Ramsey case [Ramsey v. Dunlap, 146 Tex. 196, 205 S.W.2d 979,] does not attempt to give an all-inclusive definition of the term, but holds that an error which directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, is fundamental. When the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter, the error will also be regarded as fundamental." We hold appellant's point does not present fundamental error. If we consider this point as an ordinary error, it would fail because it was not incorporated in the appellant's motion for a new trial as required by Rule 374, Rules of Civil Procedure. The court in the City of Wichita Falls v. Phillips, Tex.Civ.App., 87 S.W.2d 544, 545, held: "Since the defense of fellow-servant was not urged in defendant's pleading nor a request made for a submission of that issue to the jury, this assignment must be overruled, independently of the issue whether or not the relation of fellow-servant did in fact exist. Article 2190, R.C.S. of 1925 (as amended by Acts 1931, c. 78, § 1 [Vernon's Ann.Civ.St., art. 2190]); Ray v. Pecos & N. T. Ry. Co., 40 Tex.Civ.App. 99, 88 S.W. 466; Thurber Brick Co. v. Matthews, (Tex.Civ.App.), 180 S.W. 1189; San Antonio Traction Co. v. Emerson, (Tex.Civ.App.), 152 S.W. 468, and decisions there cited."

■ Appellee's point that the court erred in failing to enter judgment on the jury's verdict awarding her $1,000 for conscious pain and suffering of the deceased from the time of his accident until his death must be sustained. The deceased was taken to the hospital about 10:00 in the morning and died about 2:05 that afternoon. X-rays revealed that he sustained a crushing injury to his pelvis, hip and backbone. No objection was made to this testimony. The record reveals no objections were made to the issue submitted to the jury on pain and suffering. The appellant filed a motion for judgment non obstante verdicto wherein it requested the court to deny a recovery for pain and suffering because there were no pleadings to support same. The court sets out in his judgment that he is denying appellee the $1,000 as found by the jury to the conscious pain and suffering issue because the appellee's pleadings were not sufficient to authorize the submission of said issue to the jury. Where issues which are not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised by the pleadings. R.C.P. 67. Appellant contends that this court cannot consider appellee's point because the appellee filed no objections to the trial court's judgment. R.C.P. 324 provides that a motion for new trial shall not be a prerequisite for an appeal where "a judgment is rendered or denied non obstante veredicto or notwithstanding the finding of the jury on one or more special issues". "Where a judgment is rendered notwithstanding the finding of the jury, the appellee in order to have a prejudicial error committed against him at the trial considered by the appellate court must file points of error. Such points, however, need not be embodied in the motion for new trial. He may present them in his points of error in his brief." 3 Tex.Jur.2d 461.

■ We hold the appellee was not required by the rules to file a motion for new trial or complain about the trial court's judgment in order to appeal from that part of the judgment which denied her a re-

covery of $1,000 for conscious pain and suffering of the deceased because the trial court rejected the jury's finding, and entered a judgment notwithstanding said jury's finding. See Great American Indemnity Co. v. Meyer, Tex.Civ.App., 285 S.W. 2d 276; and Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891. The judgment of the trial court is reformed by adding $1,000 to the amount of the judgment.

We have considered all of appellant's points and find no merit in them and they are overruled.

The judgment is reformed and as reformed, affirmed.